IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON YOUNG,

        Plaintiff,

v.

DANIEL MONTI and LU WALKER,

        Defendants.

Case No. 3:22-CV-00146-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Dispositive Motion filed by Plaintiff Brandon Young (Doc. 46) and a Motion for Summary Judgment filed by Defendants Daniel Monti and Lu Walker (Doc. 51). For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is granted.

### FACTUAL BACKGROUND

Plaintiff Brandon Young is a former inmate of the Illinois Department of Corrections who was previously housed at Shawnee Correctional Center. In December 2019, shortly after arriving at Shawnee, Young developed a rash across the back of his head and neck. (Doc. 50, p. 10). The rash continued to spread until Young was given antibiotics to help clear it up. (*Id.*). While the antibiotics cleared the rash, the rash has continued to be a recurring problem. (*Id.* at p. 13). Young still receives antibiotics for treatment when the rash reoccurs. (*Id.* at pp. 11, 13). Young also was diagnosed with

bladder spasms around this time. (*Id.* at p. 10). The healthcare staff could not identify a cause for either the bladder spasms or the rash. (*Id.*). Young acknowledged in his deposition that he does not know where the rash came from but stated that he assumes the rash was caused by the prison's water. (*Id.*).

Young testified that starting around July 2021 the water at Shawnee was cloudy and yellowish. (*Id.*). He also noticed a smell he testified was similar to that of water mixed with sewage or fishing water. (*Id.*). He testified that the water remained this way through September or October 2021. (*Id.*). He claimed the water smelled so bad you had to mix it with Kool-Aid to drink it. (*Id.*). He also stated that the staff knew the water was contaminated because they all brought in their own water. (*Id.* at 10-12). Young concluded that the water must be infested with bacteria, although he has no evidence to support his conclusion that the water was contaminated. (*Id.* at pp. 10, 12). No boil order was issued. (*Id.* at p. 10) Young is unaware of any EPA alert being issued in relation to the water at Shawnee. (*Id.* at p. 12). He also does not have any evidence indicating that either defendant was aware of any EPA alert. (*Id.*).

On November 15, 2021, Young filed a grievance reporting that he believed the water had been contaminated for the last several weeks. (Doc. 1, p. 8) He claimed the water was subject to bacterial contaminants that made it undrinkable and unhealthy. (*Id.*). Young pointed to the aroma and color of the water to support his claim. (*Id.*). He argued that with his underlying health concerns, the "bacteria infested possibly cancerous water" was "cruel and unusual." (*Id.* at p. 9). He also reported that he was unable to get bottled water from the commissary. (*Id.*). Young believed the water was causing skin

rashes and was possibly doing other damage internally. (*Id.*). When he filed this grievance, he requested that alternative sources of water being provided, that water testing be performed, and that a notice be sent to the inmates so that they could take proper precautions. (*Id.* at p. 8). The grievance was granted emergency review status. (*Id.* at pp. 10-11). Defendant Monti responded to the grievance and indicated that there was an algae bloom that had not had time to flush through the pipes. (Doc. 50 at p. 11.) Young testified that he did not write about or discuss the water with Defendant Walker, the Warden of Programs at Shawnee, at any point. (*Id.* at 14). Young also testified that he never discussed his rash with Walker. (*Id.*).

On January 24, 2022, Young brought this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Daniel Monti and Lu Walker were deliberately indifferent to unconstitutional conditions of confinement in violation of the Eighth Amendment. (Doc. 1; Doc. 13, p. 3). He seeks monetary damages. (*Id.*). On May 30, 2023, Young filed a dispositive motion requesting an immediate ruling in his favor. (Doc. 46). On July 5, 2023, Monti and Walker filed a cross-motion for summary judgment. (Doc. 51).

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P.

56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Thus, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. 248.

## DISCUSSION

To survive Defendants' motion for summary judgment, Young must show that there is a genuine dispute of material fact for each element of his claim that Defendants were deliberately indifference to unconstitutional conditions of confinement. The Eighth Amendment places a duty on prison officials to provide prisoners "humane conditions of confinement." *Farmer,* 511 U.S. at 832. This means that prison officials must "take reasonable measures to guarantee the safety of the inmates" and "ensure that inmates receive adequate food, clothing, shelter and medical care." *Id*. Prison officials have a responsibility to provide prisoners, at a minimum, with the necessities of civilized life

including shelter, sanitation, and utilities. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989).

A prisoner plaintiff needs to establish two elements to succeed on an Eighth Amendment claim. The first is an objective component requiring that the deprivation or conditions of confinement alleged are "sufficiently serious" to result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Generally, the prisoner plaintiff must show that he is or was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Id*. The second element is a subjective component, which requires the prisoner plaintiff to establish that the defendants were "deliberately indifferent" to the unlawful conditions of confinement. *Id*.

A prison official cannot be found deliberately indifferent under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This subjective state of mind component is akin to intentional or criminally reckless conduct. *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016).

In Young's motion, he argues that Defendants knew the water was contaminated and unfit to drink but allowed him to continue to drink the water regardless. (Doc. 46). He argues that by allowing him to drink the water they knowingly put him at risk of his recurring rash and bladder spasms and that he is entitled to a ruling in his favor. (*Id.*).

Defendants' cross-motion for summary judgment argues that Young cannot show that Walker or Monti were deliberately indifferent to inhumane conditions of confinement. (Doc. 51).

Based on the record, the Court finds that no reasonable jury could conclude that either Defendant Monti or Defendant Walker were deliberately indifferent to Young's conditions of confinement. First and foremost, Young has not presented evidence to support the finding that he was subject to conditions of confinement that led to a substantial risk of harm. Young's claim is primarily based upon his allegation that the allegedly contaminated water caused a recurring rash. According to Young's own testimony, however, the rash and his "bladder spams" were present starting in December 2019 (Doc. 50, p. 10). Young did not notice anything concerning about the water until July 2021. (*Id.*). Thus, per his own testimony, the rash preexisted any potential problem with the water. He also received medical attention on multiple occasions, but healthcare staff never identified the water as the cause of the rash. (*Id.* at pp. 10-13). Even Young testified that he does not know what caused the rash, he just *assumes* it's the water. (*Id.* at p. 10). Inferences based on speculation are insufficient to establish a genuine dispute of material fact. *Armato*, 766 F.3d at 719. Young has no scientific or actual factual evidence to support his belief that the water caused his rash. In fact, he has only conclusory allegations that are not even supported by his own testimony, which identifies the rash as predating any problem with the water. Thus, no reasonable trier of fact could conclude that the drinking water caused the rash.

Additionally, Young has no evidence to support the conclusion that the algae

bloom posed a risk of causing any other substantial risk of harm. Young testified that his only familiarity with an algae bloom is from an unidentified time when the beaches in Chicago were shut down. (*Id.* at p. 11). Young concludes that it must, therefore, be dangerous. This is not actual evidence. It is mere speculation that because of one scenario, an algae bloom always presents a serious risk of harm. This is a conclusory allegation, unsupported by any expert or fact evidence, that cannot be used to establish a genuine issue of material fact.

Young also fails to establish that the water caused any other serious risk of harm. While Young alleges that the water is bacteria infested and could cause cancer or some other harm, he has no factual evidence indicating that anything was wrong with the water beyond Defendant Monti's statement that there was an algae bloom in the pipes. (Doc. 50, pp. 10-12). There was no EPA warning or boil order indicating that the water was contaminated. (*Id.* at p. 12). Nor was there any other actual evidence that the water was bacteria infested. And, as stated above, there is no evidence that the algae bloom presented a substantial risk of harm that would constitute an unconstitutional condition of confinement.

Further, even if Young could establish a genuine dispute of material fact as to whether the water constituted an unconstitutional condition of confinement, he has not provided any evidence to support a finding that Monti and Walker were deliberately indifferent to an excessive risk of harm. According to Young's own testimony, there is no evidence that Walker was even aware that Young was concerned about the water. Young testified that he had never reported his concerns about the water to Walker (Doc. 50,

p. 14). He also testified that he never spoken about his rash with her. (*Id.*). Young simply speculates that because Walker was the Warden of Programs, she must have been aware of his concerns. (*Id.*). He has no evidence that she had any actual knowledge of his concerns, and therefore, no jury could find that Walker had the requisite knowledge to be deliberately indifferent to any serious risk of harm.

Similarly, while Monti was the officer who responded to Young's grievance, no reasonable juror could find that he was deliberately indifferent to an excessive risk of harm to Young. Monti had knowledge of Young's concerns regarding the water, but there is no evidence that he had knowledge of an excessive risk of harm or failed to act to prevent that harm. Per Young's own testimony, Monti informed Young that there was an algae bloom that had not yet had time to flush through the pipes. (*Id.* at p. 11). This does not equate to knowledge of an excessive risk of harm. Young has not shown anything to indicate that Monti had any knowledge of actual, excessive risk associated with algae blooms. Again, there were no EPA warnings and no boil warning. (*Id.* at pp. 10, 12). And while Young alleged that the water could be cancerous (Doc. 1, p. 9), this is merely a conclusory allegation for which he provides no support. In fact, the only risk a fact finder could plausibly infer Monti had actual knowledge of was Young's belief that the water was causing his rashes. As already discussed, however, Young's rashes do not equate to a serious risk of harm caused by unconstitutional conditions of confinement. Thus, Young cannot prove that Monti had knowledge of an excessive risk and failed to act appropriately, and as a result, no reasonable fact finder could conclude that Monti acted with deliberate indifference.

For these same reasons, Young's motion (Doc. 46) requesting an immediate finding in his favor must be denied. Young lacks any factual evidence in support of his allegations, and as a result his motion is based solely on conclusory allegations and speculation. As previously stated, inferences based on speculation are insufficient to establish a genuine issue of material fact, and, therefore, no reasonable jury could find in Young's favor.[1]

## CONCLUSION

For these reasons, the Dispositive Motion filed by Brandon Young (Doc. 46) is **DENIED** and the Motion for Summary Judgment filed by Daniel Monti and Lu Walker (Doc. 51) is **GRANTED.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: February 16, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[1] Young bases his motion on *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992). That case, however, is distinguishable as it involves a situation where there was a genuine dispute of material fact and where there was evidence that the defendants had actual knowledge of the conditions the plaintiff was alleging were unconstitutional.